# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

CARL W. ARON SUCCESSION, ET AL.          CIV. ACTION NO. 3:22-00830

VERSUS                                                      JUDGE TERRY A. DOUGHTY

MCKESSON CORPORATION                        MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a

motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 6] filed by

Defendant McKesson Corporation.   For reasons detailed below, it is recommended that the

motion be DENIED.

## Background

On March 28, 2022, Plaintiffs the Succession of Carl W. Aron d/b/a Aron's Pharmacy

and Donna Aron (referred to collectively, in the singular, as "Aron's") filed the instant complaint

for breach of contract and defamation against its former, long-time pharmaceutical distributor

McKesson Corporation ("McKesson").   (Compl.).   Aron's alleged that, in November 2020,

after fifty years of supplying Aron's with prescription drugs that Aron's dispensed to its patients,

McKesson unilaterally and inexplicably terminated a substantial portion of the parties' business

relationship.   *Id*.   Specifically, McKesson notified Aron's that it no longer would provide the

pharmacy with any drugs that were classified as controlled substances by the United States Drug

Enforcement Agency ("DEA").   *Id*.

On or about June 19, 2021, Aron's learned that, on an unknown date, an unknown

employee of McKesson had contacted Mallinckrodt Corporation and/or its subsidiary, SpecGx,

L.L.C. (collectively referred to as "Mallinckrodt"),[1] and falsely accused Aron's of violating laws and regulations that govern a pharmacy's dispensing of controlled substances, plus falsely stating that McKesson had conducted an investigation of the matter. *Id.* The unknown McKesson employee also declined a request by Mallinckrodt to provide Mallinckrodt with the documents pertaining to the alleged investigation. *Id.*

As a result of the statements made to it by McKesson, Mallinckrodt distributed a notice to every pharmaceutical distributor with whom it did business advising them that it no longer would process chargebacks from direct customer sales of certain pharmaceutical products to Aron's. *Id.* Mallinckrodt explained that, in addition to complying with DEA regulations, it was taking these steps to fight prescription drug diversion and abuse by acting on chargeback information and enforcement actions reported in the media. *Id.* Because of Mallinckrodt's wider distribution of McKesson's false allegation that Aron's was not complying with the laws and regulations governing controlled substances, it became difficult or impossible for Aron's to find a replacement pharmaceutical distributor. *Id.* Mallinckrodt informed Aron's that it would be willing to withdraw its notice that it sent to its distributors if McKesson withdrew its allegations against Aron's. *Id.* Despite Aron's entreaties, McKesson has refused to do so. *Id.*

On August 19, 2022, McKesson filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. [doc. # 6]. The motion seeks dismissal of Aron's "Second Cause of Action," i.e., its defamation claim on the twin grounds that the alleged defamatory statement does not have the defamatory meaning that Aron's asserts, and, even if it did, it is apparent from the face of the Complaint that the statement is subject to the public interest privilege. McKesson submitted evidence in support of its motion, principally consisting

---

[1]   Mallinckrodt is a manufacturer of controlled substance pharmaceuticals, which it provides to distributors such as McKesson. *Id.*

of a declaration by its Senior Director for Regulatory Affairs, Katie Grayson, to which she

attached copies of a September-December 2020 email exchange that transpired between her and

Mallinckrodt officials.   (Grayson Decl.; M/Dismiss, Exh. A).   McKesson also submitted copies

of printouts of various news reports concerning the arrest of a Monroe cardiologist and the owner

of a medical clinic for numerous counts of prescription drug fraud, some of which included a

statement that investigators had determined that the signature of one of the cardiologist's patients

did not match the patient's signature on file at Aron's Pharmacy.   (Myriad newspaper articles;

M/Dismiss, Exh. B).

   Aron's filed its opposition to the motion to dismiss on September 9, 2022.   [doc. # 8].

McKesson filed its reply brief on September 16, 2022.   [doc.# 9].

   On December 21, 2022, the court reviewed the record and ordered Aron's to amend its

complaint to properly allege citizenship for purposes of diversity.   [doc. # 10].

   On December 28, 2022, Aron's filed an amended complaint in compliance with the

court's order.   (Amend. Compl. [doc. # 11]).   The amended complaint properly set forth Aron's

citizenship and established diversity jurisdiction, 28 U.S.C. § 1332.   The amended complaint

also realleged, by reference, the remaining allegations of the original complaint.   (Amend.

Compl.).

   On January 9, 2023, the court granted McKesson leave to file a supplemental

memorandum wherein it asked the court to treat its previously filed motion to dismiss as

encompassing the amended complaint so McKesson would not have to refile its motion to

dismiss.   *See* doc. # 12.   Indeed, when a plaintiff amends its complaint while a motion to

dismiss is pending, and a defendant maintain that the defects raised in the original motion are not

cured by the new pleading, then the court may consider the motion to dismiss as being addressed

to the amended pleading.   As the Fifth Circuit has explained,

> defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending.   Rather, [i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.

*Rountree v. Dyson,* 892 F.3d 681, 683–84 (5th Cir. 2018) (citations and internal quotation marks omitted).

In this case, McKesson contends that the amended complaint does not redress the bases for dismissal set forth in its 12(b)(6) motion.   Accordingly, the court will consider McKesson's pending motion to dismiss as encompassing the amended complaint.   *Rountree, supra*.

### **Standard of Review**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."   FED. R. CIV. P. 12(b)(6).   A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."   FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)).   A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.   *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.   *See Iqbal, supra*.   Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.   Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal, supra* (citation omitted).   A well-pleaded

4

complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.   *Twombly,*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions.   *Iqbal, supra*.   A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.   *Id*.   Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision."   *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted).   Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory.   Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."   *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011).   Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used."   *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.   *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).   However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," including public records.

*Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5ᵗʰ Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).    Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."    *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5ᵗʰ Cir. 2000) (citations and internal quotation marks omitted).

## Analysis

### I.    Defamation

Under Louisiana law,[2] defamation is a tort that involves the invasion of a person's interest in his or her reputation and good name. *Costello v. Hardy*, 864 So. 2d 129, 139-40 (La. 2004) (citations omitted).    A cause of action for defamation includes four elements:    "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."    *Johnson v. Purpera*, 320 So.3d 374, 386–87 (La. 2021) (citations omitted).    Therefore, in order to prevail, a plaintiff must prove "that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages."    *Costello, supra* (citations and internal quotation marks omitted).    If but one of the required elements of the tort is absent, the cause of action fails.    *Id.*

---

[2]    A federal court sitting in diversity applies the substantive law of the forum state.    *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citation omitted).    Furthermore, McKesson analyzed Aron's claims pursuant to Louisiana law.    Aron's did not contest applicability of Louisiana law.    Therefore, the parties implicitly agree that the disputed state law issues are governed by the substantive law of Louisiana.    *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5ᵗʰ Cir. 2012) (applied Texas law where neither side disputed that Texas law applied).

The threshold issue in a defamation cause of action is whether the words complained of are defamatory, *i.e.,* capable of a defamatory meaning. *Costello*, 864 So.2d at 141. "Defamatory words are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule." *Costello, supra*. Nevertheless,

> [w]ords which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se. When a plaintiff proves publication of words that are defamatory per se, the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant. The element of injury may also be presumed.

*Id*. (internal citations omitted).

In this case, Aron's alleged that a McKesson employee falsely communicated to Mallinckrodt that Aron's had violated the laws and regulations that govern a pharmacy's dispensing of controlled substances. (Compl., ¶ 9). Plainly, the foregoing communication to a third-party either expressly or implicitly accused Aron's of criminal or regulatory wrongdoing that, by its very nature, tended to, and, allegedly *did* injure Aron's professional reputation. In other words, McKesson's alleged communication to Mallinckrodt constitutes defamation per se, which results in a presumption of falsity, malice/fault, and injury. Even if the communication is not considered defamatory per se, Aron's further alleged that the communication had the effect of deterring other pharmaceutical manufacturers and/or distributors from associating with it, that McKesson failed to conduct a factual investigation into the matter, and that Aron's incurred financial losses as a result. (Compl., ¶¶ 21-23). In short, the Complaint states a plausible claim for defamation against McKesson.

7

## II.      Extrinsic Evidence

In an attempt to circumvent the effect of Aron's allegations and to show that its

communication to Mallinckrodt was not defamatory, McKesson adduced an email exchange

between one of its employees, Katie Grayson, and Mallinckrodt officials that was authenticated

by declaration of Katie Grayson.   (Grayson Decl. and Exhs. attached thereto; M/Dismiss, Exh.

A [doc. # 6-1]).   The emails show that, on September 30, 2020, Mallinckrodt emailed Grayson

and notified her about a social media article that stated several pharmacies, including Aron's, had

received subpoenas pursuant to the arrests of a local cardiologist and a clinic owner for

controlled substance prescription abuse.   (Sept. 30, 2020 email from R. Rogers to K. Grayson;

M/Dismiss Exh. A-1).   Mallinckrodt asked McKesson for any data and other information that it

had regarding Aron's Pharmacy and two other pharmacies.   *Id.*   After further prompting by

Mallinckrodt, McKesson, via Grayson, advised Mallinckrodt on December 4, 2020, that "[w]e

have completed our due diligence review of Aron's Pharmacy.   As a result of our review, we

have terminated the pharmacy's ability to purchase controlled substances from McKesson."

(Dec. 4, 2020 email from K. Grayson to R. Rogers; M/Dismiss Exh. A-1).

Aron's contends that the court may not consider the declaration and emails submitted by

McKesson in the context of the present Rule 12(b)(6) motion.   Of course, the emails and

declaration are not referenced in Aron's complaint.   *See Collins, supra* (documents that a

defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred

to in the plaintiff's complaint and are central to its claim).[3]   Moreover, in the absence of

---

[3] Citing district court decisions principally from other circuits, McKesson asserts that the court may "'consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was *integral* to the complaint and there is

evidence conclusively establishing that Grayson's email exchange was the only communications

between McKesson and Mallinckrodt regarding Aron's, the emails are not necessarily "central"

to Aron's claim.[4]   *Robinson v. CSL Plasma Ctr.*, Civ. Action No. 21-2520, 2022 WL 4295252,

at *2 (N.D. Tex. Aug. 25, 2022), *R&R adopted,* 2022 WL 4295340 (N.D. Tex. Sept. 16, 2022)

(affidavit is not referred to in the plaintiff's complaint or central to his claim, so it is not a part of

the pleadings).[5]

When, as here, a party presents "matters outside the pleadings," the court enjoys

"complete discretion" to either accept or exclude the evidence for purposes of determining the

motion.   *Carroll v. Team One Logistics/Bus. Transp. Sols.*, Civ. Action No. 19-1770, 2020 WL

---

no dispute about the document's authenticity.'" *Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693, 709 (D. Md. 2021) (emphasis added).   However, "[a] document is integral when its very existence, and not the mere information it contains, gives rise to the legal rights asserted."   *Id*. (citations and internal quotation marks omitted).   Even under McKesson's proffered standard for consideration of extrinsic evidence, the court is not persuaded that the declaration and emails are "integral" to Aron's complaint.

[4] In its reply brief, McKesson admitted that it could not submit a declaration stating that other communications did not occur between McKesson and Mallinckrodt because that would go beyond authentication of the emails, which was the only reason that the declaration could be considered in the first instance.   *See* McKesson Reply Brief, pg. 9 n.5.

[5] McKesson faults Aron's for asking the court to speculate that there must have been another communication between McKesson and Mallinckrodt where, as here, Aron's remains unable to specify when or who made the alleged defamatory statement.   In support of its argument, McKesson cited *Badeaux v. Sw. Computer Bureau, Inc.*, wherein the Louisiana Supreme Court stated that "[p]laintiff in a defamation suit must name the individual offenders and allege separate acts of defamation as to each, including specific defamatory statements."   *Badeaux v. Sw. Computer Bureau, Inc.*, 929 So.2d 1211, 1218–19 (La. 2006) (citing *Juneau v. Avoyelles Par. Police Jury,* 482 So.2d 1022, 1027 (La. App. 3d Cir. 1986)).   In *Badeaux*, however, the plaintiff's allegations of defamatory statements were conclusory and not set forth with reasonable specificity.   *Id*.   Moreover, *Badeaux* relied on *Juneau*, a case that had multiple defendants.   *Id*.   Here, there is but one defendant, and Aron's has provided adequate specificity of the alleged defamatory statement.

5520606, at *3 (N.D. Tex. Aug. 10, 2020), *R&R adopted,* 2020 WL 5513442 (N.D. Tex. Sept. 11, 2020) (citations omitted).   However, "if . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."   FED. R. CIV. P. 12(d).

In this case, the court declines to consider the declaration and attached emails submitted by McKesson.   However, even if the court were to consider the evidence, that would not change the result.   While Grayson's December 4, 2020 email to Mallinckrodt, by itself, is not necessarily defamatory, it purportedly was sent in response to email inquiries by Mallinckrodt, which requested "due diligence information" from McKesson about Aron's, in the wake of a social media article that documented alleged prescription drug abuse.   The fact that McKesson stated that it elected to terminate Aron's ability to purchase controlled substances from McKesson after it purportedly had conducted its "due diligence review" of Aron's, supports the reasonable inference that McKesson endorsed a finding of wrongdoing by Aron's.   Of course, at the pleading stage, all reasonable inferences must be construed in favor of the plaintiff.

### III.    Privilege

Even if the alleged statement may be considered defamatory, McKesson contends that the statement is subject to the public interest privilege:   "when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified."   *Costello*, 864 So. 2d at 141 (citations omitted).   Privilege is an affirmative defense that "rests upon the notion that sometimes, as a matter of public policy, in order to encourage the

10

free communication of views in certain defined instances, one is justified in communicating

defamatory information to others without incurring liability." *Kennedy, supra* (citation

omitted).

"Privileged communications are divided into two general classes:   (1) absolute; and (2)

conditional or qualified." *Id*. (citation omitted).   McKesson invoked the latter category, which

contemplates a variety of situations wherein the interest that an individual is seeking to vindicate

is regarded as sufficiently important to justify some leeway for making mistakes such that

publication of defamatory statements is deemed to be conditionally or qualifiedly privileged. *Id*.

(citation omitted).

"[T]he elements of the conditional privilege have been described as 'good faith, an

interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and

publication in the proper manner and to proper parties only.'" *Id*. (quoted source omitted).

Further,

> [t]he analysis for determining whether a conditional privilege exists involves a two-step process. First, it must be determined whether "the attending circumstances of a communication occasion a qualified privilege," which means that a determination must be made of whether the requirements for invoking the privilege are satisfied. The second step of the analysis requires a determination of whether the privilege was abused, which requires that the grounds for abuse—malice or lack of good faith—be defined. While the first step is generally determined by the court as a matter of law, the second step of determining abuse of a conditional privilege or malice is generally a fact question for the jury "[u]nless only one conclusion can be drawn from the evidence."

*Smith v. Our Lady of the Lake Hosp., Inc.*, 639 So.2d 730, 745 (La. 1994) (internal citations

omitted).

To prove abuse of the conditional privilege, knowledge or reckless disregard as to falsity

is required. *Kennedy*, 935 So.2d at 684.   "Reckless disregard," means that the defendant was

11

"highly aware that the statements were probably false." *Id*. at 688.   Gross negligence does not

suffice.   *Id*.   "[D]etermining abuse of a conditional privilege or malice is generally a fact

question for the jury unless only one conclusion can be drawn from the evidence."   *Flanner v.*

*Chase Inv. Servs. Corp.*, 600 Fed. App'x. 914, 925 (5th Cir. 2015) (quoted source omitted).

Assuming, without deciding, for purposes of this motion, that Louisiana would extend a

privilege for the communication of alleged defamatory matter from one private citizen to another

for the purpose of preventing a crime, as recognized by Comment (f) of RESTATEMENT (SECOND)

TORTS § 598,[6] the court is not persuaded that all elements of the affirmative defense appear on

the face of Aron's Complaint.

As stated above, the elements of the conditional privilege contemplate good faith, a

statement limited in scope to the interest to be upheld, a proper occasion, and publication in the

proper manner and to proper parties only.   Here, Aron's alleged that McKesson falsely

communicated to Mallinckrodt that Aron's had violated laws and regulations that govern the

dispensing of controlled substances.   (Compl., ¶ 9).   It is not known which specific laws and

regulations McKesson falsely accused Aron's of violating or whether McKesson had any

reasonable basis for the accusation.[7]   No explanation for the charge appears in the Complaint,

nor would McKesson provide Aron's with any explanation for its decision to terminate its sale of

controlled substance medications to Aron's.   In fact, McKesson declined a request by

---

[6] "In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case." *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003).

[7] The court cannot consider the declaration and emails submitted by McKesson.   *See* discussion, *supra*.

Mallinckrodt to disclose documents related to the investigation that it falsely stated it had

performed.   (Compl., ¶ 9).[8]

To the extent that the court may take judicial notice of the news articles submitted by

McKesson for the limited purpose of evaluating what was in the public realm at the time period

at issue,[9] they provide scant support to McKesson in the absence of evidence detailing the actual

false statements made by McKesson to Mallinckrodt.   Moreover, the articles suggest that the

authorities were aware of Aron's alleged activities, and, consequently, it is questionable whether

McKesson even needed to advise another private citizen, i.e., Mallinckrodt, of Aron's alleged

misconduct in an attempt to thwart a crime.   The articles indicate that, at worst, Aron's failed to

authenticate a lone patient's signature when filling a prescription.   McKesson has not

established, on the present record, that such a transgression supports the imposition, and

publication, of an effective "death penalty" to a pharmacy's ability to fill prescriptions for

controlled substances.

In short, McKesson has not established from the face of the Complaint that the

requirements for invoking the privilege are satisfied.   Thus, Aron's need not show, at the

pleading stage, that McKesson abused the privilege.   *See United States ex rel. Byrd v. Acadia*

*Healthcare Co., Inc.*, Civ. Action No. 18-312, 2021 WL 1081121, at *31 (M.D. La. Mar. 18,

2021) (plaintiff need not prove at the pleading stage the inapplicability of an affirmative defense

---

[8] After suit was filed, McKesson provided Plaintiffs' counsel with a copy of the investigation
report.   (McKesson Reply, pg. 4 n.3).

[9] *See Amos v. Cain*, Civ. Action No. 20-0007, 2020 WL 6688864, at *5 (N.D. Miss. Nov. 12,
2020).

that represents an exception or safe harbor to an otherwise sufficiently pled claim).[10]

Regardless, the peculiar circumstances surrounding McKesson's communication to

Mallinckrodt, e.g., McKesson's false statement that it had conducted an investigation when it

allegedly had not, together with McKesson's refusal to provide Mallinckrodt with pertinent

supporting documents, provides some support for the inference, at the pleading stage, that

McKesson's false communication to Mallinckrodt was motivated by ill will.

The court recognizes that dismissal under Rule 12(b)(6) sometimes may be premised

upon a successful affirmative defense.   However, that defense must appear on the face of the

complaint.   *EPCO, supra*.   Here, the Complaint does not establish all of the elements of

McKesson's affirmative defense.

### Conclusion

Relying upon judicial experience and common sense, the court finds that Aron's

Complaint states a plausible cause of action for defamation, sufficient to afford McKesson fair

notice of the claim against it, along with the reasonable expectation that discovery will reveal

relevant evidence for each of the elements of the claim.   *Twombly, supra*.[11]   Accordingly,

IT IS RECOMMENDED that Defendant McKesson Corporation's motion to dismiss for

---

[10] Plaintiffs need not plead facts to overcome affirmative defenses.   *See Jones v. Bock,* 549 U.S. 199, 216; 127 S.Ct. 910, 921; (2007) (exhaustion is an affirmative defense that plaintiffs need not specifically plead in their complaints); *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) (plaintiff's pleadings need not identify elements that relate to affirmative defense).   Rather, it is defendant who bears the burden of pleading an affirmative defense.   *See Gomez v. Toledo*, 446 U.S. 635, 640; 100 S.Ct. 1920, 1924 (1980) (citing *inter alia*, Fed. R. Civ. P. 8(c)).

[11] Clearly, McKesson has completed much of the legwork for a future motion for summary judgment.   Before filing, or reaching such a motion, however, Aron's should have the opportunity to conduct discovery.

failure to state a claim upon which relief can be granted [doc. # 25] be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 13th day of January, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE